UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ARMANDO OROZCO-GUILLEN,<br><br>    Defendant. | Case No. 1:16-CR-67-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to suppress filed by defendant Orozco-Guillen. The Court held an evidentiary hearing, taking testimony from Detective Kevin Louwsma and Officer Timothy Cooper, and viewing a police-cam video of the traffic stop at issue. After the hearing, the Court took the motion under advisement. For the reasons explained below, the Court will deny the motion.

## FACTUAL BACKGROUND

In January of 2016, Ada County Narcotics Detectives were investigating a methamphetamine trafficking ring involving Brian Cluff. An undercover officer purchased methamphetamine from Cluff and learned that Cluff used drivers to deliver his drugs. During surveillance, officers observed a driver stop at Cluff's shop and then travel to, and stop at, a residence at 7273 S. Shadowmoss Ave in Boise and a shop at 4232 Adams St in Garden City.

Both addresses had a link to a known meth trafficker, James Peirsol. Peirsol would visit the Shadowmoss house because his girlfriend lives there and uses a car registered to Peirsol. The Adams St. address is Peirsol's shop. The driver who stopped at both addresses was pulled over and his vehicle subjected to a drug dog sniff but the dog did not alert to any substance.

The officers obtained a warrant to search Cluff's shop and located 22 pounds of meth along with other drugs, packaging material for drugs, and weapons including sawed off shotguns. The officers also performed a trash pull at the Shadowmoss home and retrieved packaging material consistent with the material found in Cluff's shop.

On March 1, 2016, officers conducted surveillance on the Shadowmoss home. Anticipating the need for a traffic stop of any vehicle that might visit and leave the Shadowmoss home, Detective Kevin Louwsma asked a patrol unit to be in the area. That patrol unit was manned by Officer Timothy Cooper.

Detective Louwsma testified that he told Officer Cooper about what was found in the Cluff search, about how the Shadowmoss home was connected to Cluff and Peirsol, and about how the trash pull at the Shadowmoss home collected packaging material similar to that found in the Cluff search. Officer Cooper, in his testimony, confirmed Detective Louwsma's testimony. The Court finds both men credible.

That evening, a black Dodge Ram pick-up truck arrived at the Shadowmoss home and backed into the driveway with its tailgate protruding into the garage. The driver took a large duffle bag from the truck into the house. Later, the surveillance officers could see two men doing something at the rear of the truck. To get a better view, one of the

**Memorandum Decision & Order – page 2**

surveillance officers walked by the garage and could hear power tools being used near the rear tail-gate although he could not see precisely what they were doing. When the work finished, the Dodge pulled out and left the Shadowmoss home.

Louwsma radioed Officer Cooper and told him about these observations and about how it appeared that work was being done on the tailgate of the Dodge. Louwsma told Officer Cooper that he believed either a load of methamphetamine was being dropped off or that cash had been picked up, and directed Officer Cooper to pull the Dodge over.

At 8:47 p.m., Officer Cooper pulled the Dodge over and requested a drug dog from a separate patrol unit. The driver of the Dodge was defendant Armando Orozco-Guillen. He immediately provided the documents requested by Officer Cooper. For the next 17 minutes or so, Officer Cooper engaged Orozco-Guillen in small talk, waiting for the drug dog. The drug dog unit arrived about 17 minutes later. The officers ordered Orozco-Guillen out of the car and conducted a pat-down search on him, finding a torx-head screwdriver in his pocket. By this point, about 20 minutes had elapsed since the Dodge was pulled over. The drug dog was deployed and alerted to the tailgate of the Dodge. The officers used the torx-head screwdriver found on Orozco-Guillen to take apart the tailgate (the screwdriver fit the screws precisely) and found three large gallon-sized Ziploc bags that contained bundles of cash held together with rubber bands.

## ANALYSIS

Orozco-Guillen seeks to suppress the Ziploc bags and screwdriver. He argues that Officer Cooper improperly delayed the traffic stop to wait for the drug dog.

**Memorandum Decision & Order – page 3**

In *Rodriguez v. U.S.,* 135 S.Ct. 1609, 1614-16 (2015), the Supreme Court held that a drug-dog sniff of a vehicle conducted during a traffic stop must be supported by an independent, reasonable suspicion of criminal activity if it adds any time to the stop. The delay here of 20 minutes would violate *Rodriguez* unless the traffic stop was independently supported by a reasonable suspicion of criminal activity.

At the time he pulled the Dodge over, did Officer Cooper have a reasonable suspicion that the driver was involved in criminal activity? A hunch is not enough; the standard of "reasonable suspicion" requires "some minimal level of objective justification" for making the stop. *U.S. v. Sokolow,* 490 U.S. 1, 7 (1989). That objective test is based on the analysis of a "practical person" making "common sense conclusions about human behavior." *Id.* The officer can rely on another officer who has viewed the suspicious activity: "Where one officer knows facts constituting reasonable suspicion . . . and he communicates an appropriate order or request, another officer may conduct a warrantless stop, search, or arrest without violating the Fourth Amendment." *U.S. v. Ramirez,* 473 F.3d 1026, 1037 (9th Cir. 2007).

Here, Detective Louwsma had fully informed Officer Cooper of the details of the investigation. In essence, Officer Cooper knew what Detective Louwsma knew. Thus, when Officer Cooper pulled over the Dodge truck, Officer Cooper knew that (1) Cluff was a major drug dealer; (2) Cluff had drivers make drug deliveries; (3) Peirsol, a drug dealer, was connected to the Shadowmoss home; (4) cars had been seen leaving Cluff's shop and stopping at the Shadowmoss home and Peirsol's shop; (5) packaging material had been found in the Shadowmoss trash pull that was similar to the material found in the

**Memorandum Decision & Order – page 4**

Cluff search and is often used to package drugs; and (5) on the evening in question, the Dodge truck arrived at the Shadowmoss home and work was done on its tailgate before it left that home.

This information would lead a reasonable person, making common-sense conclusions about human behavior, to believe that the Dodge may be transporting illegal drugs or drug money hidden in its tailgate. The Court therefore finds that Officer Cooper had an independent reasonable suspicion that the driver of the Dodge was engaged in criminal activity when he pulled it over on the evening of March 1, 2016. Thus, the delay to wait for a drug dog was not a violation of Orozco-Guillen's Fourth Amendment rights. The pat-down search that revealed the screwdriver was proper under these circumstances. *See U.S. v. $109,179 in U.S. Currency,* 228 F.3d 1080 (9th Cir. 2000) (approving pat-down search for weapons based on reasonable suspicion that defendant was engaged in drug trafficking). The drug-dog alert on the tailgate gave the officers probable cause to search the tailgate. *U.S. v. Lingenfelter,* 997 F.2d 632, 639 (9th Cir. 1993).

For all these reasons, the Court will deny the motion to suppress.

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to suppress (docket no. 61) is DENIED.



DATED: March 20, 2017

_____
B. Lynn Winmill
Chief Judge
United States District Court